1

2

3

4

5

6

7

8

9 **IN THE UNITED STATES DISTRICT COURT**

10 **FOR THE EASTERN DISTRICT OF CALIFORNIA**

11

12
NADIA ROBERTS, et al.,

13
                          Plaintiffs,

14
            vs.

15
UBS AG, et al.,

16
                          Defendants.

17
_____/

18

CASE NO. CV F 12-0724 LJO SKO

**ORDER ON DEFENDANT UBS AG'S F.R.Civ.P. 12 MOTION TO DISMISS** (Doc. 26.)

19                              <u>**INTRODUCTION**</u>

20         Defendant UBS AG seeks to dismiss as improperly pled and legally barred plaintiffs'[1] fraud,

21 breach of fiduciary duties, malpractice and related claims arising from tax penalties plaintiffs incurred

22 in connection with foreign investments and tax shelters with defendant UBS AG.  Plaintiffs filed no

23 timely papers to oppose UBS AG's F.R.Civ.P. 12(b)(6) motion to dismiss.  This Court considered UBS

24 AG's motion to dismiss on the record without a hearing, pursuant to Local Rule 230(c).  For the reasons

25 discussed below, this Court DISMISSES plaintiffs' claims subject to the UBS AG's motion to dismiss.

26 _____

27         [1]         Plaintiffs are Nadia and Sean Roberts (the "Roberts"), Bernhard and Heidi Gubser (the "Gubsers"), Anton Ginzburg, M.D. ("Dr. Ginzburg"), Aurther Joel Eisenberg ("Mr. Eisenberg"), Jeffrey Chernick ("Mr. Chernick") and Mr.
28 Chernick's Liberian corporation Shumba and Hong Kong corporation Simba, and these plaintiffs will be referred to collectively as "plaintiffs."

1

# BACKGROUND[2]

## Summary

UBS AG is a Swiss corporation and provides global financial services, including banking, securities, trading, brokerage and wealth management services. The FAC also names as defendants four individuals associated with UBS AG, three Swiss business entities, two private Swiss banks, and a Bermuda corporation. The individual plaintiffs are residents of California, Texas, Washington and New York and are former UBS AG clients. The FAC alleges that UBS AG defendants[3] induced plaintiffs "to conceal offshore assets from the U.S. Government using a variety of means, disguises, schemes, tactics, and covers" and "engaged in unlawful trading of U.S. securities" to result in plaintiffs' failure to pay U.S. taxes on their UBS AG investments. The FAC alleges that each plaintiff "faced criminal investigation relating to the shell company structure set up and carried out by Defendants" and "agreed to pay millions of dollars in tax penalties, plus interest, on top of related costs and professional fees." UBS AG challenges the FAC's multiple tort and related claims as lacking sufficient facts and as barred by plaintiffs' own conduct.

## IRS Foreign Account And Trust Reporting

Internal Revenue Service ("IRS") Form 1040, Schedule B, Line 7a ("Line 7a") asks: "did you have a financial interest in or signature authority over a financial account (such as a bank account, securities account, or brokerage account located in a foreign country?" Schedule B indicates that if a taxpayer has a foreign account, the taxpayer generally must identify the account's location and complete IRS Form TD F 90-22.1 known as the Report of Foreign Bank and Financial Accounts ("FBAR"). FBAR instructions require a taxpayer to file a FBAR if the taxpayer has more than $10,000 in foreign accounts and to disclose maximum account values and financial institutions holding accounts.

## UBS AG's Scheme

In 2001, the U.S. Treasury required UBS AG to enter into a Qualified Intermediary ("QI")

---

[2]  The factual recitation summarizes plaintiffs' operative First Amended Complaint ("FAC") and is derived from other matters which this Court may consider.

[3]  The FAC does not specifically identify the "UBS AG defendants" but they are presumably the 11 identified defendants.

2

Agreement to require UBS AG clients to complete Internal Revenue Service ("IRS") forms to identify beneficial account owners believed or known to be U.S. citizens or residents.[4]   UBS AG developed a plan "to manipulate its U.S. customers such that UBS would avoid its own compliance with the QI Agreement while also misleading its customers regarding taxes and reporting" in that UBS AG "advised the use of third party trust entities" which "did not comply with its advisement-disclosure-withholding duties under the QI Agreement" and "encouraged inherited offshore accounts to remain in said offshore accounts and concealed the QI Agreement requirements."   UBS AG contracted professional service firms "to create the appearance of legality and independent recommendation and counsel in order to perpetrate their unlawful scheme to avoid the terms of the QI Agreement."

UBS AG feigned compliance with the IRS and QI Agreement but "failed to disclose this illegal activity to Plaintiffs or any of its other U.S. clients."   UBS AG "schemed to defraud U.S. authorities and solicited, offered, and induced U.S. clients to conceal offshore assets," "anticipated and planned to retaliate against their own clients by creating or positing evidence contrary to the truth should UBS AG clients come forward to the IRS," and "failed to disclose this illegal activity to Plaintiffs."

**<u>Execution Of The Scheme As To Plaintiffs</u>**

***The Roberts***

The Roberts are married.  In 2004, Sean Roberts ("Mr. Roberts") owned a UBS AG account in the Isle of Mann and UBS AG banker Claude Ullman convinced Mr. Roberts to transfer his account to UBS AG's Swiss location.  UBS AG engaged defendant Beda Singenberger ("Mr. Singenberger") to create a third-party trust for Mr. Roberts but neither UBS AG nor Mr. Singenberger "advised plaintiffs of the illegal nature of said third party trust and/or plaintiffs' reporting requirements."  UBS AG failed to advise the Roberts of the QI Agreement, that their accounts violated the QI Agreement, and that the Roberts "needed to take steps to advise the IRS and mitigate their damages."  In February 2009, UBS AG sent information to the IRS about the Roberts but delayed until November 2009 to advise the Roberts of an amnesty Voluntary Disclosure program.

---

[4]        UBS AG notes that the IRS established the QI Program to require financial institutions to identify and withhold tax on U.S. source income paid to foreign bank accounts, including income generated by U.S. securities, real estate and other investments.  UBS AG further notes that the QI Agreement "does not create a reporting requirement toward accountholders."

1   In June 2011, the Roberts entered into plea agreements to plead guilty to filing a false tax return.

2   ***The Gubsers***

3   The Gubsers were married during 1978-2008 and held a Swiss UBS AG account which they

4   allowed to sit and which experienced income growth during 2004-2009.  UBS AG never advised the

5   Gubsers that they were subject to the QI Agreement.  In December 2010, the Gubsers "realized that they

6   may be subject to prosecution by the IRS for failing to declare a 40-year old account originating in

7   Switzerland."  The Gubsers participated in the Voluntary Disclosure program.

8   ***Dr. Ginzburg***

9   In 2000, UBS AG banker Gian Gisler ("Mr. Gisler") advised Dr. Ginzburg to change the

10   structure of Dr. Ginzburg's UBS AG funds.  UBS AG representatives advised Dr. Ginzburg to close a

11   Liechtenstein-based trust structure in favor of a Hong Kong-based trust, that Dr. Ginzburg "would not

12   have to pay any taxes on any capital gains or dividends until the funds were repatriated" to Dr.

13   Ginzburg's country of future domicile, the United States or Israel, and that he would pay only taxes on

14   possible capital gains and dividends when he repatriated the funds.  Dr. Ginzburg was never informed

15   of the QI Agreement, and in November 2008, UBS AG froze his accounts to prevent him to mitigate

16   market losses.  UBS AG representatives refused to disclose information about Dr. Ginzburg's accounts

17   and liquidated the stock portfolio at 2009 levels to result in a $1.5 million loss.

18   In July 2011, Dr. Ginzburg pled guilty to criminal tax fraud.

19   ***Mr. Eisenberg***

20   Mr. Eisenberg held a UBS AG account in the Grand Caymans and during a vacation there,

21   entered a UBS AG branch to inquire about the account.  He was informed that his account was on the

22   "abandoned accounts" list and transferred to Switzerland.  Mr. Eisenberg traveled to Switzerland and

23   defendant Hansredi Schumacher ("Mr. Schumacher") advised Mr. Eisenberg to set up a trust.  Mr.

24   Eisenberg permitted Mr. Schumacher to set up a Liechtenstein account and was advised "that he would

25   not be required to disclose his account because of the trust formation."  In 2010, Mr. Eisenberg

26   discovered that UBS AG double charged fees during the account's life.

27   UBS AG failed to advise Mr. Eisenberg of the QI Agreement, the need to report his account for

28   taxes, and release by UBS AG of his name to the United States to preclude Mr. Eisenberg to correct

4

defects or seek voluntary disclosure.  The IRS prosecuted Mr. Eisenberg who entered into a December 2010 agreement to plead guilty to filing a false tax return and paid $2.5 million penalties on a $65,000 tax bill.

### *Mr. Chernick*

Mr. Chernick succeeded in manufacturing toys with his Shumba corporation.  In 2000, UBS AG executive director Phillip Bigger ("Mr. Bigger") recommended to move Mr. Chernick's Cayman Islands account to UBS AG's Hong Kong office, and Mr. Chernick opened up UBS AG Hong Kong accounts. Mr. Chernick was advised to hold U.S. securities in the Hong Kong accounts "without disclosing that Chernick would have to report such holdings to the U.S. or otherwise advising him of the QI Agreement terms."  In 2002, defendant Matthias Rickenbach with UBS AG's authorization "caused the setup of a sham entity to hold Shumba and Simba."  In 2006, Mr. Bigger caused Mr. Chernick to close his Shumba account at the UBS Hong Kong office and transferred the account's assets, including U.S. securities, to a UBS AG Zurich account.  UBS AG failed to inform Mr. Chernick of the QI Agreement requirements to file IRS forms or UBS AG withholding of taxes.

Mr. Chernick entered into a July 2009 agreement to plead guilty to filing a false tax return.

### *Common Claims*

As to all plaintiffs, the FAC alleges that:

1.   UBS AG "regularly traded securities on behalf of Plaintiffs" and misrepresented "proper licensure to make each transaction illegally prior to and at the time of each transaction";

2.   UBS AG defendants "repeatedly assured Plaintiffs that the management scheme and structure of their investments had been reviewed by UBS AG attorneys and were authorized by and in compliance with U.S. reporting laws"; and

3.   UBS AG defendants "regularly met with Plaintiffs" but failed to advise of "the illegality of UBS AG's scheme, any problems related to the tax and investment advice, and/or the likelihood that each Plaintiff would be subject to tax penalties, interest, and criminal investigation as a result of UBS AG's scheme, all the while continuing to manage Plaintiffs' respective funds in accordance with the scheme."

/ / /

1

**Criminal Prosecution Of UBS AG**

2     In November 2008, the United States government filed indictments against UBS AG executives,

3  managers and bankers.  On February 18, 2009, UBS AG and the United States government entered into

4  a Deferred Prosecution Agreement ("DPA") by which UBS AG admitted that during 2000-2007, UBS

5  AG "participated in a scheme to defraud the United States and its agency, the IRS by actively assisting

6  or otherwise facilitating a number of United States individual taxpayers in establishing accounts at UBS

7  in a manner designed to conceal the United States taxpayers' ownership or beneficial interest in these

8  accounts."  On August 12, 2009, the United States government and UBS AG reached an agreement in

9  principle by which 4,450 UBS AG clients would be revealed.

10

**DISCUSSION**

11

**F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards**

12     The FAC alleges 20 tort and related claims which UBS AG contends are precluded by plaintiffs'

13  "own tax fraud" in that all plaintiffs but the Gubsers have pled guilty to criminal tax fraud by knowingly

14  filing false returns and concealing income.  UBS AG faults plaintiffs' failure to disclose their foreign

15  accounts on tax returns to render the FAC's claims based on an "implausible premise that UBS somehow

16  caused them to reasonably believe they could legally lie to the IRS, keep secret their foreign accounts

17  from the IRS, and fail to pay taxes."

18     "When a federal court reviews the sufficiency of a complaint, before the reception of any

19  evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether

20  a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the

21  claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development

22  Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either

23  a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal

24  theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of

25  Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).  A F.R.Civ.P. 12(b)(6) motion "tests the legal sufficiency

26  of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

27     In addressing dismissal, a court must:  (1) construe the complaint in the light most favorable to

28  the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff

can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and must not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983). A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

A plaintiff is obliged "to provide the 'grounds' of his 'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit summarized: "In sum, for a complaint to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be

7

plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949-1950.

A plaintiff suing multiple defendants "must allege the basis of his claim against each defendant to satisfy Federal Rule of Civil Procedure 8(a)(2), which requires a short and plain statement of the claim to put defendants on sufficient notice of the allegations against them." *Gauvin v. Trombatore*, 682 F.Supp. 1067, 1071 (N.D. Cal. 1988). "Specific identification of the parties to the activities alleged by the plaintiffs is required in this action to enable the defendant to plead intelligently." *Van Dyke Ford, Inc. v. Ford Motor Co.,* 399 F.Supp. 277, 284 (D. Wis. 1975).

With these standards in mind, this Court turns to UBS AG's challenges the FAC claims.

## **Fraud**

The FAC's (first) fraudulent misrepresentation and concealment and (third) negligent misrepresentation claims allege that to induce plaintiffs to transfer their account investments to UBS AG and to pay hundreds of thousands of dollars in fees, UBS AG and other defendants misrepresented that the formation and form of shell corporations "were permitted by the IRS" and concealed from plaintiffs that "they not only owed taxes on their investments with the IRS but would face criminal investigation for the management structure of their respective accounts." The FAC's (second) constructive fraud claim alleges that UBS AG and other defendants breached duties owed to plaintiffs by forming shell

corporations "with the representation that said formations were permitted by the IRS," failing "to report each Plaintiff's information to the IRS or to withhold taxes pursuant to the QI agreement," providing "erroneous tax opinions," and concealing that each plaintiff "would face criminal investigation."

### Bar Of Plaintiffs' Own Fraud

UBS AG initially challenges the complaint's fraud claims as barred by plaintiffs' own fraud. UBS AG points to *Olenicoff v. UBS AG*, 2012 WL 1192911, at *1 (C.D. Cal. 2012), where the plaintiff pursued claims against UBS AG after the plaintiff pled guilty to knowingly and willfully failing to disclose off-shore accounts on his tax returns.  The fellow district judge in *Olenicoff*, 2012 WL 1192911, at *1, observed:

> To defend itself, UBS is forced to strenuously insist that its prior guilty plea only admitted to assisting willing clients with tax fraud, not forcing unsuspecting clients into tax evasion. While its argument is ironic, UBS is right. Even assuming that UBS gave [plaintiff] fraudulent tax advice, that makes UBS a co-conspirator, not a defendant in this litigation.

UBS AG argues that plaintiffs must bear responsibility for their own fraud and related actions in absence of FAC allegations that they misinterpreted or did not know of Line 7a or that UBS AG prepared their tax returns, advised them how to answer tax return questions, or represented that plaintiffs could legally deny existence of their UBS AG accounts.

### Fraud Elements

UBS AG further challenges the FAC's absence of facts to support fraud elements.

The elements of a California fraud claim are: (1) misrepresentation (false representation, concealment or nondisclosure); (2) knowledge of the falsity (or "scienter"); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Superior Court*, 12 Cal.4th 631, 638, 49 Cal.Rptr.2d 377 (1996).  The same elements comprise a cause of action for negligent misrepresentation, except there is no requirement of intent to induce reliance. *Caldo v. Owens-Illinois, Inc.*, 125 Cal.App.4th 513, 519, 23 Cal.Rtpr.3d 1 (2004).

"[T]o establish a cause of action for fraud a plaintiff must plead and prove in full, factually and specifically, all of the elements of the cause of action." *Conrad v. Bank of America*, 45 Cal.App.4th 133, 156, 53 Cal.Rptr.2d 336 (1996).  There must be a showing "that the defendant thereby intended to induce the plaintiff to act to his detriment in reliance upon the false representation" and "that the plaintiff

9

1   actually and justifiably relied upon the defendant's misrepresentation in acting to his detriment."

2   *Conrad*, 45 Cal.App.4th at 157, 53 Cal.Rptr.2d 336; *see Grant Thornton LLP v. Prospect High Income*

3   *Fund*, 314 S.W.3d 913, 923 (Tex. 2010) ("Both fraud and negligent misrepresentation require that the

4   plaintiff show actual and justifiable reliance"); *J.A.O. Acquisition Corp. v Stavitsky*, 8 N.Y.3d 144, 148,

5   831 N.Y.S.2d 364 (N.Y. 2007); *Lawyers Title Ins. Corp. v. Baik*, 147 Wash.2d 536, 624, 55 P.3d 619

6   (Wash. 2002).  "The absence of any one of these required elements will preclude recovery."  *Wilhelm*

7   *v. Pray, Price, Williams & Russell*, 186 Cal.App.3d 1324, 1332, 231 Cal.Rptr. 355 (1986).

8         UBS AG faults the FAC's absence of facts to support plaintiffs' actual and justifiable reliance

9   on UBS AG's misrepresentations or omissions.  UBS AG argues that fraud claims based on an

10   "omission" theory fail in that Line 7a seeks an unequivocal disclosure ("did you have a financial interest

11   in or signature authority over a financial account . . . located in a foreign country?").

12         UBS AG attacks an affirmatively misrepresented tax-reporting theory in that there is no

13   justifiable reliance if a plaintiff unreasonably fails to conduct an independent inquiry that would have

14   uncovered the truth or disregards known and obvious risks.  *See Cameron v. Cameron*, 88 Cal.App.2d

15   585, 594, 199 P.2d 443 (1948) ("If [one] becomes aware of facts that tend to arouse his suspicion, or if

16   he has reason to believe that any representations made to him are false or only half true, it is his legal

17   duty to complete his investigation and he has no right to rely on statements of the other contracting

18   party.") UBS AG contends that given clarity of disclosure required by IRS tax forms, plaintiffs could

19   not have justifiably relied on UBS AG's alleged statements suggesting otherwise.

20         UBS AG points to the absence of allegations that UBS AG informed plaintiffs to deny that they

21   held interests in foreign accounts or not to file Schedule B's and FBARs.  UBS AG continues that an

22   account holder is unable to claim that UBS AG caused the account holder's tax fraud when he/she

23   declared under penalty of perjury for years that he/she "had no interest in foreign accounts despite

24   knowing that he or she did."

25                           ***Particularity Pleading Standard***

26         UBS AG faults the FAC's absence of specific allegations to support fraud-based claims.

27   / / /

28   / / /

F.R.Civ.P. 9(b) requires a party to "state with particularity the circumstances constituting fraud."[5] In the Ninth Circuit, "claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements." *Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1141 (C.D. Cal. 2003). A court may dismiss a claim grounded in fraud when its allegations fail to satisfy F.R.Civ.P. 9(b)'s heightened pleading requirements. *Vess*, 317 F.3d at 1107.[6] A motion to dismiss a claim "grounded in fraud" under F.R.Civ.P. 9(b) for failure to plead with particularity is the "functional equivalent" of a F.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim. *Vess*, 317 F.3d at 1107. As a counter-balance, F.R.Civ.P. 8(a)(2) requires from a pleading "a short and plain statement of the claim showing that the pleader is entitled to relief."

F.R.Civ.P. 9(b)'s heightened pleading standard "is not an invitation to disregard Rule 8's requirement of simplicity, directness, and clarity" and "has among its purposes the avoidance of unnecessary discovery." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996). F.R.Civ.P 9(b) requires "specific" allegations of fraud "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671-672 (9th Cir. 1993) (internal quotations omitted; citing *Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866, 866 (9th Cir. 1997)). The Ninth Circuit has explained:

> Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud. The time, place and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not "constitute" fraud. The statement in question must be false to be fraudulent. Accordingly, our cases have consistently required that circumstances indicating falseness be set forth. . . . [W]e [have] observed that plaintiff must include statements regarding the time, place, and *nature* of

---

[5]    F.R.Civ.P. 9(b)'s particularity requirement applies to state law causes of action: "[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1995)(italics in original)).

[6]    "In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess*, 317 F.3d at 1103-1104.

the alleged fraudulent activities, and that "mere conclusory allegations of fraud are insufficient." . . .   The plaintiff must set forth what is false or misleading about a statement, and why it is false.  In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading. . . .

In certain cases, to be sure, the requisite particularity might be supplied with great simplicity.

*In Re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1547-1548 (9th Cir. 1994) (en banc) (italics in original) *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F.Supp. 1297 (C.D. Cal. 1996); *see Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (fraud allegations must be accompanied by "the who, what, when, where, and how" of the misconduct charged); *see Neubronner*, 6 F.3d at 672 ("The complaint must specify facts as the times, dates, places, benefits received and other details of the alleged fraudulent activity."); *Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (1986) ("the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation").

In a fraud action against a corporation, a plaintiff must "allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written."  *Tarmann v. State Farm Mut. Auto. Ins. Co.,* 2 Cal.App.4th 153, 157, 2 Cal.Rptr.2d 861 (1991).

F.R.Civ.P. 9(b) "does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764-765 (9th Cir. 2007) (quoting *Haskin v. R.J. Reynolds Tobacco Co*., 995 F.Supp. 1437, 1439 (M.D. Fla.1998)). In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, "identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir.1989).  "To state a claim of fraudulent conduct, which carries substantial reputational costs, plaintiffs must provide each and every defendant with enough information to enable them 'to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with.'" *Pegasus Holdings v. Veterinary Centers of America, Inc.*, 38 F.Supp.2d 1158, 1163 (C.D. Cal. 1998) (quoting *In re Worlds of Wonder Sec. Litig.*,

1  694 F.Supp. 1427, 1433 (N.D. Cal.1988)).

2       UBS AG argues that FAC's detailed allegations are limited to statements republished from UBS

3  AG 2002, 2004 and 2006 publications and as to those statements, there is no clarity that "plaintiffs were

4  exposed to these statements, or how those plaintiffs were affected."

5       UBS AG raises valid, unopposed attacks on the FAC's fraud claims.  The FAC fails to address

6  plaintiffs' own fraudulent misreporting of taxes and its impact on their fraud claims against UBS AG.

7  The FAC fails to satisfy F.R.Civ.P. 9(b) particularity requirements.  The FAC's bulk and verbosity do

8  not equate to specific allegations of fraud attributed to identified defendants.  The FAC lumps multiple

9  defendants and offers little clarity as to the description and source of affirmative misrepresentations or

10  concealments.  A further FAC failing is the lack of sufficient facts to support reliance elements

11  especially considering the obvious risk of failing to report income to the IRS.  The FAC's fraudulent

12  misrepresentation and concealment and negligent misrepresentation claims are subject to dismissal with

13  leave to amend.

14                              **Breach Of Fiduciary Duty**

15       The FAC's (six) breach of fiduciary duty and (ninth) professional malpractice claims accuse UBS

16  AG and other defendants of fiduciary breaches by, among other things:

17       1.    Soliciting and manipulating plaintiffs to transfer assets to and maintain accounts with

18              UBS AG;

19       2.    Failing to disclose and comply with the QI Agreement and other disclosure and tax

20              requirements;

21       3.    Failing to ensure that plaintiffs' UBS AG transactions complied with law;

22       4.    Advising plaintiffs that their UBS AG transactions were legitimate and complied with

23              tax law;

24       5.    Promoting and selling unregistered and ineffective tax shelters; and

25       6.    Improperly managing plaintiffs' assets.

26       UBS AG argues that fiduciary-based fraud, negligence and breach claims fail in the absence of

27  an actionable duty to impose on UBS AG.  UBS AG contends initially that as a bank, it owed no

28  fiduciary duty to plaintiffs.

***Elements***

"The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff's injury." *Mendoza v. City of Los Angeles*, 66 Cal.App.4th 1333, 1339, 78 Cal.Rptr.2d 525 (1998) (citation omitted).

"The elements of a cause of action for breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) a breach of the fiduciary duty; and (3) resulting damage. *Pellegrini v. Weiss*, 165 Cal.App.4th 515, 524, 81 Cal.Rptr.3d 387 (2008).

In *Salahutdin v. Valley of California, Inc.,* 24 Cal.App.4th 555, 562, 29 Cal.Rptr.2d 463 (1994), the California Court of Appeal explained constructive fraud:

> Constructive fraud is a unique species of fraud applicable only to a fiduciary or confidential relationship. . . . [A]s a general principle constructive fraud comprises any act, omission or concealment involving a breach of legal or equitable duty, trust or confidence which results in damage to another even though the conduct is not otherwise fraudulent. Most acts by an agent in breach of his fiduciary duties constitute constructive fraud. The failure of the fiduciary to disclose a material fact to his principal which might affect the fiduciary's motives or the principal's decision, which is known (or should be known) to the fiduciary, may constitute constructive fraud. Also, a careless misstatement may constitute constructive fraud even though there is no fraudulent intent. (Citation and internal punctuation omitted).

***Account Management***

UBS AG argues that fiduciary-based claims founded on mismanagement of plaintiffs' accounts fail in the absence of a subject fiduciary duty to impose on UBS AG.

A fiduciary relationship arises "between parties to a transaction wherein one of the parties is . . . duty bound to act with the utmost good faith for the benefit of the other party." *Herbert v. Lankershim*, 9 Cal.2d 409, 483, 71 P.2d 220 (1937). A fiduciary relationship "ordinarily arises where a confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he voluntarily accepts or assumes to accept the confidence, can take no advantage from his acts relating to the interest of the other party without the latter's knowledge or consent." *Herbert*, 9 Cal.2d at 483, 71 P.2d 220.

Nonetheless "no fiduciary relationship is established merely because 'the parties reposed trust and confidence in each other.'" *Girard v. Delta Towers Joint Venture*, 20 Cal.App.4th 1741, 1749, 26

14

Cal.Rptr.2d 102 (1993) (quoting *Worldvision Enterprises, Inc. v. American Broadcasting Companies, Inc.,* 142 Cal.App.3d 589, 595, 191 Cal.Rptr. 148 (1983)).  To be charged with a fiduciary obligation, a person must knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law.  *City of Hope Nat. Medical Center v. Genentech, Inc.*, 43 Cal.4th 375, 385, 181 P.3d 142 (2008).

"California courts have not extended the 'special relationship' doctrine to include ordinary commercial contractual relationships" *Martin v. U-Haul Co. Of Fresno,* 204 Cal.App.3d 396, 412, 251 Cal.Rptr. 17 (1988) (citations omitted).  The "relationship between a bank and its depositor is not fiduciary in character." *Das v. Bank of America, N.A.*, 186 Cal.App.4th 727, 741, 112 Cal.Rptr.3d 439 (2010).  "[U]nder ordinary circumstances the relationship between a bank and its depositor is that of debtor-creditor, and is not a fiduciary one." *Lawrence v. Bank of America*, 163 Cal.App.3d 431, 437, 209 Cal.Rptr. 541 (1985); *see Bennice v. Lakeshore Sav. & Loan Ass'n,* 254 A.D.2d 731, 732, 677 N.Y.S.2d 842 (1998) ("Absent the existence of a special relationship of trust and confidence, a bank has no duty to inform a customer or depositor of the tax consequences of a transaction"); *Tokarz v. Frontier Federal Sav. and Loan Ass'n*, 33 Wash. App. 456, 459, 656 P.2d 1089 (1982); *Jockusch v. Towsey*, 51 Tex. 129, 131 (1879).

### *Tax Advice*

UBS AG further challenges fiduciary-based claims in the absence of FAC allegations that plaintiffs "yielded control over tax matters to UBS" or delegated "total control over tax reporting to UBS." UBS AG further notes that the FAC does not allege that UBS AG advised plaintiffs "not to resort to other tax accountants."

UBS AG faults "tax adviser" claims a inadequately pled in that the fraud, negligence and fiduciary claims turn on a relationship triggering a duty to disclose, but the QI Agreement is between UBS AG and the IRS, not plaintiffs, and thus generates UBS AG duties to the IRS,  not to plaintiffs. UBS AG notes that the QI Agreement requires it to collect information about account holders, not to provide information to account holders. *Thomas v. UBS AG*, 2012 WL 2396866, at * 5 (N.D. Ill. 2012) ("UBS's obligations under the QI Agreement run to the IRS, not the Plaintiffs. Therefore, Plaintiffs' allegation that UBS had a duty to Plaintiffs is not plausible"). UBS AG continues that QI Agreement

15

1   never altered plaintiffs' disclosure requirements "on the IRS's crystal-clear tax forms."

2        The FAC lacks facts to support fiduciary-based claims. The FAC reveals a banking-investment

3   or commercial relationship among UBS AG and plaintiffs. Certainly, no fiduciary relationship could

4   arise from arrangements to conceal income and avoid taxes. No facts are apparent to warrant an attempt

5   to amend fiduciary-based claims which are subject to dismissal with prejudice. Nonetheless, facts may

6   exist to attempt to support claims based on general negligence or malpractice to the extent UBS AG

7   owed such duties to plaintiffs. As such, the FAC's general negligence or malpractice based claims are

8   subject to dismissal with leave to amend.

9                                           **Securities Fraud**

10       The FAC's (fourth) securities fraud claim accuses UBS AG and other defendants of violating

11  Section 10(b) of the Securities and Exchange Act, 15 U.S.C. § 78j(b), and its Rule 10b-5, 17 C.F.R. §

12  240.10b-5. The FAC's (fifth) securities fraud claim accuses UBS AG and other defendants of violation

13  of California Corporations Code sections 25401 ("section 25401") and 25501 ("section 25501") based

14  on misrepresentations and concealments that:

15            1.      UBS AG and/or its third-party affiliates would prepare proper and legal documentation

16                    to form IRS-permissible shell corporations;

17            2.      Ownership of UBS AG accounts "would be fully compliant with all U.S. reporting

18                    requirements"; and

19            3.      Defendants would report all income and accounts required by the IRS "to ensure each

20                    Plaintiff would comply with all U.S. tax reporting requirements."

21       UBS AG faults the securities fraud claims in absence of FAC allegations of "purchase or sale

22  of any securities by plaintiffs from UBS AG." A federal securities fraud claim requires an untrue

23  statement or omission of material fact "in connection with the purchase or sale of any security." *Basic*

24  *Inc. v. Levinson*, 485 U.S. 224, 231, 108 S.Ct. 978 (1988). To support a California securities fraud

25  claim, a plaintiff must allege that there was an "offer to sell a security in this state or buy or offer to buy

26  a security." *Goodworth Holdings Inc. v. Suh*, 239 F.Supp.2d 947, 962 (N.D. Cal. 2002).

27       UBS AG criticizes the FAC's failure to identify "a single purchase or sale of a security that is

28  connected to the alleged fraudulent statements by UBS AG." UBS AG challenges the FAC's failure "to

                                                    16

identify even one security that was purchased or sold through their UBS accounts." To satisfy the "in connection with the purchase or sale of any security" requirement, "the misrepresentation or omission must pertain to the securities themselves; allegations of fraud merely involving securities are not sufficient." *Bissell v. Merrill Lynch & Co., Inc.*, 937 F.Supp. 237, 242 (S.D.N.Y. 1996). "[U]nless the alleged fraud concerns the value of the securities bought or sold, or the consideration received in return, such fraud is not 'in connection with' the purchase or sale of a security." *Bissell*, 937 F.Supp. at 242.

UBS AG further faults absence of allegations of plaintiffs' damage "by any alleged misstatement regarding regulatory licenses" given the there are no claims that plaintiffs "were denied a rightful interest in any securities that UBS offered, or purported to offer, but was not legally able to facilitate." UBS AG notes the absence of facts to connect unspecified licenses to plaintiffs' truthful completion of their tax returns.

Turning to the California securities fraud claim, UBS AG further faults the absence of facts of "privity between the purchaser and seller of the security." Section 25401 "requires plaintiff to demonstrate privity with each defendant." *Goodworth Holdings Inc. v. Suh*, 239 F.Supp.2d 947, 963 (N.D. Cal. 2002). Section 25501 provides that any person who violates section 25401 "shall be liable to the person who purchases a security from him." *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal.App.4th 226, 252-253, 70 Cal.Rptr.3d 199 (2007). "Section 25501 on its face requires privity between the plaintiff and the defendant." *Apollo Capital*, 158 Cal.App.4th at 253, 70 Cal.Rptr.3d 199; *see California Amplifier, Inc. v. RLI Ins. Co.*, 94 Cal.App.4th 102, 109, 113 Cal.Rptr.2d 915 (2001) (Section 25501 "retain[s] the privity requirement from common law fraud"); *Admiralty v. Jones,* 677 F.2d 1289, 1296 (9th Cir. 1982) (under section 25501, "liability was limited to actual sellers" and seller's attorney "was not the literal seller, as required by this section").

The FAC's securities fraud claims fail in the absence of facts of sales between UBS AG and plaintiffs. The FAC focuses on alleged exorbitant fees charged by UBS AG but identifies no specific securities transactions involving UBS AG as a party. At best, the FAC hints to fraud involving securities, not pertaining to the securities themselves. No facts are apparent to warrant an attempt to amend securities fraud claims which are subject to dismissal with prejudice.

/ / /

1

**RICO**[7]

2      The FAC's (seventh) RICO claim alleges UBS AG's and other defendants' violation of 18

3  U.S.C. § 1962(c) ("section 1962(c)") based on predicate acts of:

4          1.      "Embezzlement by the UBS AG Defendants and the third party affiliates who set up

5                   improper trusts . . . and who further took money from Plaintiffs under false pretenses

6                   between 2008 and 2010";

7          2.      "Fraudulent misrepresentation and concealment by . . . individuals on behalf of UBS AG

8                   . . . between 2000 and 2010 relating to fund management, tax legalities, liabilities, and

9                   filing requirements, privacy, quality of securities, true price of securities,

10                  misappropriation of funds, and true use of assets"; and

11         3.      "Securities fraud . . . between 2000 and 2010, including intentional statutory and

12                  governmental violations of selling securities without proper licensure, and ignoring non-

13                  licensure of employees and third party securities promoters."

14      The FAC's (eighth) RICO conspiracy claim alleges UBS AG and other defendants conspired

15  jointly to violate section 1962(c) through a pattern of racketeering and in turn to violate 18 U.S.C. §

16  1962(d) ("section 1962(d)").

17      Section 1962(c) and (d) provide:

18              (c) It shall be unlawful for any person employed by or associated with any
    enterprise engaged in, or the activities of which affect, interstate or foreign commerce,
19  to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs
    through a pattern of racketeering activity or collection of unlawful debt.

20

21              (d) It shall be unlawful for any person to conspire to violate any of the provisions
    of subsection (a), (b), or (c) of this section.

22

23      A violation of § 1962(c) "requires (1) conduct (2) of an enterprise (3) through a pattern (4) of

24  racketeering activity. The plaintiff must, of course, allege each of these elements to state a claim."

25  *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275 (1985).

26      Subsection (5) of 18 U.S.C. § 1961("section 1961") defines "pattern of racketeering activity" to

27

28      [7]      RICO refers to the Racketeer and Corrupt Practices Act ("RICO"), 18 U.S.C. §§ 1961, et seq.

1  require "at least two acts of racketeering activity, one of which occurred after the effective date of this

2  chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the

3  commission of a prior act of racketeering activity."  Section 1961"does not so much define a pattern of

4  racketeering activity as state a minimum necessary condition for the existence of such a pattern." *H.J.,*

5  *Inc. v. Northwest Bell Telephone Co.*, 492 U.S. 229, 237, 109 S.Ct. 2893 (1989).  Section 1961(5) "says

6  of the phrase 'pattern of racketeering activity' only that it 'requires at least two acts of racketeering

7  activity, one of which occurred after [October 15, 1970,] and the last of which occurred within ten years

8  (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.' It

9  thus places an outer limit on the concept of a pattern of racketeering activity that is broad indeed." *H.J.,*

10  *Inc.*, 492 U.S. at 237, 109 S.Ct. 2893.  "Section 1961(5) concerns only the minimum *number* of

11  predicates necessary to establish a pattern; and it assumes that there is something to a RICO pattern

12  *beyond* simply the number of predicate acts involved." *H.J., Inc.*, 492 U.S. at 238, 109 S.Ct. at 2900

13  (italics in original).

14      UBS AG faults the FAC's failure to allege "any predicate acts that would form the basis" for the

15  FAC's RICO claims.  UBS AG notes that securities fraud fails to support a RICO claim and points to

16  18 U.S.C. § 1964(c): "no person may rely upon any conduct that would have been actionable as fraud

17  in the purchase or sale of securities to establish a violation of section 1962."  "In 1995, Congress

18  amended the RICO statute to eliminate securities fraud as a predicate act upon which to base a RICO

19  claim. . . . The rule that a plaintiff cannot assert a RICO claim based on predicate acts that sound in

20  securities fraud is applicable even if, as is the case here, the claim is plead as a matter of mail fraud or

21  wire fraud." *Swartz v. KPMG, LLC*, 401 F.Supp.2d 1146, 1151 (W.D. Wash. 2004).

22      UBS AG argues that a RICO claim based on other fraud as predicate acts fails in the absence of

23  "the particular contents of the alleged fraudulent representations."  UBS AG contends that the FAC lacks

24  allegations of UBS AG's embezzlement.

25      The Ninth Circuit applies F.R.Civ.P. 9(b) particularity requirements to RICO claims under 18

26  U.S.C. § 1962. *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989); *Alan Neuman*

27  *Prods., Inc. v. Albright*, 862 F.2d 1388, 1392-93  (9th Cir. 1988) ("The allegations of predicate acts in

28  the complaint concerning those elements of RICO are entirely general; no specifics of time, place, or

nature of the alleged communications are pleaded. This is a fatal defect under Fed.R.Civ.P. 9(b), which requires that circumstances constituting fraud be stated with particularity."); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986) ("We have interpreted Rule 9(b) to mean that the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.")

"The mere assertion of a RICO claim consequently has an almost inevitable stigmatizing effect on those named as defendants. In fairness to innocent parties, courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990).

"The particularity requirements of Rule 9(b) apply to allegations of mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343, when used as predicate acts for a RICO claim." *Murr Plumbing, Inc. v. Scherer Bros. Financial Services Co.*, 48 F.3d 1066, 1069 (8th Cir. 1995).

UBS AG faults the RICO conspiracy claim's absence of "allegations of coordination or organization among UBS AG and other Defendants who are alleged to have 'continued' some sort of scheme during the years after plaintiffs closed their UBS accounts in June 2005."

The FAC's RICO claims fail. Securities fraud fails to serve as a predicate act for a RICO claim. The FAC's RICO claims based on predicate acts of securities fraud are subject to dismissal with prejudice. RICO claims based on other predicate acts fail in absence of particularity to satisfy F.R.Civ.P. 9(b), similar to the FAC's fraud claims. Although the FAC offers little to support a potential RICO claim, out of an abundance of caution, the RICO claims, based on predicate acts other than securities fraud, are dismissed with leave to amend.

**Disgorgement**

The FAC's (tenth) disgorgement claim alleges that UBS AG and other defendants charged for "management" services which "were not customary, but were excessive, especially in light of the alleged scheme" and UBS AG's and other defendants' lacking licenses "to conduct any of the transactions, give advice, sell, and/or invest" plaintiffs' assets." The disgorgement claim seeks "all fees, profits, commissions, received by Defendants either directly from each Plaintiff or from any and all other Defendants and/or third parties, in the preparation of and formation of business entities, and 'salaries'

1   obtained from entities" using plaintiffs' assets.

2          Disgorgement is an "equitable remedy designed to deprive a wrongdoer of his unjust

3   enrichment." *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1231 (D.C. Cir.1989). UBS AG contends

4   that the FAC is unable to allege a claim for disgorgement, which is a remedy,  "not a claim in itself."

5   *S.E.C. v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1478 (2nd Cir.1996). *Moorehead v. Deutsche Bank*

6   *AG*, 2011 WL 4496221, at *3, n. 1 (N.D. Ill. 2011) ("Defendants correctly argue that 'disgorgement' is

7   a remedy rather than an independent cause of action"); *In re Wiand*, 2007 WL 963162, at * 15 (M.D. Fla.

8   2007) (disgorgement claim failed "as a matter of law because disgorgement is not an independent cause

9   of action. It may be a remedy for a viable cause of action at common law or, in some circumstances, is

10   provided as a statutory remedy for certain claims").

11          UBS AG argues that equitable grounds do not support disgorgement in that UBS AG disgorged

12   profits with its DPA settlement with the United States government.

13          Nothing supports disgorgement as a separate claim to subject the FAC's (tenth) disgorgement

14   claim to dismissal with prejudice.

15                                    **Civil Conspiracy**

16          The FAC's (eleventh) civil conspiracy claim alleges that UBS AG and other defendants engaged

17   in civil conspiracies to misrepresent to plaintiffs "the true nature of the investment scheme to defraud

18   each Plaintiff into paying unnecessary and excessive fees for a fraudulent product and fraudulent services

19   and to convert assets from each Plaintiff."

20          UBS AG faults a civil conspiracy claim as not actionable.

21          "[C]ivil conspiracy is not an independent tort." *Kidron v. Movie Acquisition Corp.*, 40

22   Cal.App.4th 1571, 1581, 47 Cal.Rptr.2d 752 (1995); *see Four Bros. Boat Works, Inc. v. Tesoro*

23   *Petroleum Companies, Inc.*, 217 S.W.3d 653, 668 (2006) ("There is no independent liability for civil

24   conspiracy"); *Hoeffner v. Orrick, Herrington & Sutcliffe LLP*, 85 A.D.3d 457, 924 N.Y.S.2d 376, 377

25   (App. Div. 2011) ("it is well settled that New York does not recognize an independent civil tort of

26   conspiracy"). "Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons

27   who, although not actually committing a tort themselves, share with the immediate tortfeasors a common

28   plan or design in its perpetration." *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503,

510-511, 28 Cal.Rptr.2d 475 (1994) (citing *Wyatt v. Union Mortgage Co.,*24 Cal.3d 773, 784,157

Cal.Rptr. 392, 598 P.2d 45 (1979)).  "Standing alone, a conspiracy does no harm and engenders no tort

liability. It must be activated by the commission of an actual tort." *Applied Equipment*, 7 Cal.4th at 511,

28 Cal.Rptr.2d 475.  "The essence of the claim is that it is merely a mechanism for imposing vicarious

liability; it is not itself a substantive basis for liability." *Berg & Berg Enterprises, LLC v. Sherwood*

*Partners, Inc.*, 131 Cal.App.4th 802, 823, 32 Cal.Rptr.3d 325 (2005).

Nothing supports civil conspiracy as a separate claim to subject the FAC's (eleventh) civil

conspiracy claim to dismissal with prejudice.

### **Accounting**

The FAC's (nineteenth) accounting claim alleges that UBS AG and other defendants "have

received money, a portion of which is still due to each Plaintiff," but the amount of money due cannot

be ascertained and/or verified without an accounting."

UBS AG argues that accounting is not an actionable claim.

An accounting cause of action is equitable and may be sought where the accounts are so

complicated that an ordinary legal action demanding a fixed sum is impracticable. *Civic Western Corp.*

*v. Zila Industries, Inc.,* 66 Cal.App.3d 1, 14, 135 Cal.Rptr. 915 (1977).  A suit for an accounting will not

lie where it appears from the complaint that none is necessary or that there is an adequate remedy at law.

*Civic Western,* 66 Cal.App.3d at 14, 135 Cal.Rptr. 915.  An accounting will not be accorded with respect

to a sum that a plaintiff seeks to recover and alleges in his complaint to be a sum certain. *Civic Western,*

66 Cal.App.3d at 14, 135 Cal.Rptr. 915.  Moreover, an accounting claim "need only state facts showing

the existence of the relationship which requires an accounting and the statement that some balance is due

the plaintiff." *Brea v. McGlashan*, 3 Cal.App.2d 454, 460, 39 P.2d 877 (1934).

"A right to an accounting is derivative; it must be based on other claims." *Janis v. California*

*State Lottery Com.*, 68 Cal.App.4th 824, 833-834, 80 Cal.Rptr.2d 549 (1998).  Moreover, as an equitable

matter, an accounting frequently "presents a fiduciary relation between the parties in the nature of a trust

which brings it especially within equitable remedies." *Kritzer v. Lancaster*, 96 Cal.App.2d 1, 6, 214

P.2d 407 (1950).

The FAC lacks facts to support an accounting, especially given dismissal of fiduciary-based

1   claims.  There are no facts to support complicated accounts, and presumably plaintiffs have the ability

2   to ascertain what they allegedly paid to UBS AG.  Nothing suggests that a remedy at law will not address

3   the matters raised by the accounting claim, which is subject to dismissal with prejudice.

4                                             **Declaratory Relief**

5            The FAC's (twentieth) declaratory relief claim seeks judicial determinations that UBS AG and

6   other defendants are "legally responsible" for interest and penalties assessed by taxing authorities and

7   plaintiffs' professional fees and costs in connection with investigations and audits. The declaratory relief

8   claim further seeks judicial determination that agreements "entered into with Defendants are void and

9   unenforceable."

10           The Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201, 2202, provides in pertinent part:

11                   In a case of actual controversy within its jurisdiction . . . any court of the United
                     States, upon the filing of an appropriate pleading, may declare the rights and other legal
12                   relations of any interested party seeking such declaration, whether or not further relief
                     is or could be sought.  Any such declaration shall have the force and effect of a final
13                   judgment or decree and shall be reviewable as such.

14   28 U.S.C. §2201(a).

15           The DJA's operation "is procedural only."  *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*,

16   300 U.S. 227, 240, 57 S.Ct. 461, 463 (1937).  "A declaratory judgment is not a theory of recovery."

17   *Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd.*, 41 F.3d 764, 775 (1st Cir. 1994).  The DJA

18   "merely offers an *additional remedy* to litigants."  *Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 21

19   (2nd Cir. 1997) (italics in original).  A DJA action requires a district court to "inquire whether there is

20   a case of actual controversy within its jurisdiction."  *American States Ins. Co. v. Kearns*, 15 F.3d 142,

21   143 (9th Cir. 1994).

22           Declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in clarifying

23   and settling the legal relations in issue, and (2) when it will terminate and afford relief from the

24   uncertainty, insecurity, and controversy giving rise to the proceeding."  *Bilbrey by Bilbrey v. Brown*, 738

25   F.2d 1462, 1470 (9th Cir.1984).

26           As to a controversy to invoke declaratory relief, the question is whether there is a "substantial

27   controversy, between parties having adverse legal rights, or sufficient immediacy and reality to warrant

28   the issuance of a declaratory judgment."  *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270,

273, 61 S.Ct. 510, 512 (1941).  The U.S. Supreme Court has further explained:

> A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. . . . The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Haworth*, 300 U.S. at 240-241, 57 S.Ct. at 464 (citations omitted).

A declaratory relief action "brings to the present a litigable controversy, which otherwise might only be tried in the future." *Societe de Conditionnement v. Hunter Eng. Co., Inc.*, 655 F.2d 938, 943 (9th Cir. 1981).  As an  equitable remedy, declaratory relief is "dependent upon a substantive basis for liability" and has "no separate viability" if all other causes of action are barred.  *Glue-Fold, Inc. v. Slautterback Corp.*, 82 Cal.App.4th 1018, 1023, n. 3, 98 Cal.Rptr.2d 661 (2000).

The FAC fails to support a declaratory relief claim given dismissal of other claims subject to UBS AG's motion to dismiss.  The FAC fails to substantiate an independent claim for declaratory relief, and such claim is subject to dismissal with leave to amend.

**Breach Of Contract**

The FAC's (sixteenth) breach of contract claim alleges that plaintiffs "entered into implied, oral and written contracts with Defendants to provide [them] with professionally competent investment advisory and execution services, tax and legal advice and services, and accounting services." The breach of contract claim further alleges that UBS AG and other defendants "breached their contracts by, among other things, providing each Plaintiff with advice, opinions, recommendations, representations, instructions, and services that Defendants either knew or reasonably should have known to be wrong" and charging plaintiffs "fees, costs, and expenses that were not chargeable or agreed to by each Plaintiff."

"The standard elements of a claim for breach of contract are: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom."  *Wall Street Network, Ltd. v. New York Times Co.*, 164 Cal.App.4th 1171, 1178, 80 Cal.Rptr.3d 6 (2008).  "To form a contract, an 'offer must be sufficiently definite . . . that the performance promised is reasonably certain.'"  *Alexander v. Codemasters Group Limited*, 104

Cal.App.4th 129, 141. 127 Cal.Rptr.2d 145 (2002).

Essential elements to contract existence are: (1) "[p]arties capable of contracting;" (2) "[t]heir consent;" (3) a "lawful object;" and (4) a "sufficient cause or consideration." Cal. Civ. Code, § 1550.

"A written contract may be pleaded either by its terms – set out verbatim in the complaint or a copy of the contract attached to the complaint and incorporated therein by reference – or by its legal effect. In order to plead a contract by its legal effect, plaintiff must allege the substance of its relevant terms." *McKell v. Washington Mutual, Inc.*, 142 Cal.App.4th 1457, 1489, 49 Cal.Rptr.3d 227 (2006) (internal citations omitted).

UBS AG characterizes the FAC "as too vague and indefinite, and therefore unenforceable, for plaintiff's failure to allege, in nonconclusory language, as required, the essential terms of the parties' purported contract, including the specific provisions of the contract upon which liability is predicated." *Sud v. Sud*, 211 A.D.2d 423, 621 N.Y.S.2d 37, 38 (App. Div. 1995); *Bissessur v. Indiana University Bd. of Trustees*, 581 F.3d 599, 603 (7th Cir. 2009) ("A plaintiff may not escape dismissal on a contract claim, for example, by stating that he had a contract with the defendant, gave the defendant consideration, and the defendant breached the contract. What was the contract? The promises made? The consideration? The nature of the breach?").

UBS AG is correct that the FAC's purported breach of contract claims are vague and conclusory. The FAC fails to identify sufficiently precise contract terms, their breach, who breached them, and how they were breached. The FAC fails to identify sufficiently plaintiffs' consideration to support breach of contract claims to warrant dismissal of the breach of contract claim with leave to amend.

**Conversion**

The FAC's (seventeenth) conversion claim alleges that UBS AG and other defendants "wrongfully interfered with each Plaintiff's interests in his investment assets by":

1.    Charging "thousands of dollars in excessive and unauthorized fees";

2.    Creating "unnecessary 'shell' corporations and/or charg[ing] unnecessary transaction fees and referral fees;" and

3.    Wrongfully freezing "accounts and otherwise charg[ing] improper 'fees' upon closing each Plaintiff's account and transferring the funds back to each Plaintiff."

"Conversion is the wrongful exercise of dominion over the property of another." *Oakdale Village Group v. Fong*, 43 Cal.App.4th 539, 543, 50 Cal.Rptr.2d 810 (1996). "To establish conversion, a plaintiff must show: (1) the plaintiff's ownership or right to possession to the property at the time of conversion; (2) the defendant's conversion by a wrongful act; and (3) damages." *Oakdale Village Group*, 43 Cal.App.4th at 543-544, 50 Cal.Rptr.2d 810. "Money cannot be the subject of a cause of action for conversion unless there is a specific, identifiable sum involved, such as where an agent accepts a sum of money to be paid to another and fails to make the payment." *McKell v. Washington Mut., Inc.*, 142 Cal.App.4th 1457, 1491, 49 Cal.Rptr.3d 227 (2006). "A specific and identified amount of money can form the basis of a conversion claim, but when the money is not identified and not specific, the action is to be considered as one upon contract or for debt and not for conversion." *Ross v. U.S. Bank Nat. Ass'n*, 542 F.Supp.2d 1014, 1024 (N.D. Cal. 2008) (internal quotation omitted).

UBS AG faults the absence of FAC allegations that UBS AG retained, controlled or applied to its use property. UBS AG criticizes the FAC's allegation of "excessive fees" charged rather than a specific converted sum.

The FAC lacks sufficient specificity to support a conversion claim. The alleged funds converted are not a specific, identifiable sum to warrant dismissal of the conversion claim with leave to amend.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. DISMISSES with leave to amend the FAC's (first) fraudulent misrepresentation and concealment and (third) negligent misrepresentation claims;

2. DISMISSES with prejudice the FAC's claims arising from an alleged fiduciary relationship among UBS AG and plaintiffs but DISMISSES with leave to amend claims arising from general negligence or malpractice;

3. DISMISSES with prejudice the FAC's (fourth and fifth) securities fraud claims;

4. DISMISSES with prejudice the FAC's (seventh and eighth) RICO claims based on predicate acts of securities fraud but DISMISSES with leave to amend RICO claims based on predicate acts other than securities fraud;

5. DISMISSES with prejudice the FAC's (tenth) disgorgement claim;

6.      DISMISSES with prejudice the FAC's (eleventh) civil conspiracy claim;

7.      DISMISSES with prejudice the FAC's (nineteenth) accounting claim;

8.      DISMISSES with leave to amend the FAC's (twentieth) declaratory relief claim;

9.      DISMISSES with leave to amend the FAC's (sixteenth) breach of contract claim;

10.     DISMISSES with leave to amend the FAC's (seventeenth) conversion claim;

11.     ORDERS plaintiffs, no later than February 21, 2013, to file and serve either: (a) a second amended complaint, excluding claims dismissed with prejudice; or (b) a statement that plaintiffs do not seek to pursue claims in this action; and

12.     ORDERS UBS AG, no than March 14, 2013, to file and serve a response to the second amended complaint.

If plaintiffs proceed with this action, this Court ADMONISHES plaintiffs to file a clear, concise second amended complaint to comply with F.R.Civ.P. 8(b)'s requirement to state "a short and plain statement of the claim" and F.R.Civ.P. 8(d)(1)'s requirement that "[e]ach allegation must be simple, concise, and direct."[8]  This requirement "applies to good claims as well as bad, and is the basis for dismissal independent of Rule 12(b)(6)."  *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996). "Something labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint."  *McHenry*, 84 F.3d at 1180.  "Prolix, confusing complaints . . . impose unfair burdens on litigants and judges."  *McHenry*, 84 F.3d at 1179.  This Court FURTHER ADMONISHES plaintiffs that failure to file a second amended complaint with requisite simplicity, conciseness and directness will serve as grounds to dismiss its claims.  This Court FURTHER ADMONISHES plaintiffs not to attempt to replead or purse claims dismissed with prejudice or for which there are insufficient supporting facts and that this Court will grant plaintiffs no further attempts

/ / /

/ / /

---

[8]     This Court contemplated setting a page limit for plaintiffs' second amended complaint.  Given dismissal of several claims and this Court's requirements of simplicity, conciseness and clarity, this Court sees no reason why the second amended complaint should exceed 40 pages.

to plead claims.

IT IS SO ORDERED.

**Dated:** **January 30, 2013**          **/s/  Lawrence J. O'Neill**
                                        UNITED STATES DISTRICT JUDGE

28